IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| TISHA CREEL, on behalf of | ) | |
| herself and others | ) | |
| similarly situated, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
|     v. | ) | 2:09cv728-MHT |
| | ) | (WO) |
| TUESDAY MORNING, INC., | ) | |
| | ) | |
|     Defendant. | ) | |

OPINION AND ORDER

Plaintiff Tisha Creel brings this action under the

Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, on

behalf of herself and others similarly situated, claiming

that defendant Tuesday Morning, Inc. violated the FLSA by

failing to pay her overtime wages.  The jurisdiction of

the court is properly invoked pursuant to 29 U.S.C.

§ 216(b) and 28 U.S.C. § 1331.  This matter is now before

the court on Creel's motion to conditionally certify a

national collective action and facilitate class notice

pursuant to 29 U.S.C. § 216(b).  For the reasons that

follow, the court will deny Creel's motion, albeit without prejudice.


## I.  BACKGROUND

Creel is a former employee of Tuesday Morning, a retailer that sells brand name merchandise at discounted prices at 841 stores in 46 states.  Creel alleges that Tuesday Morning, as a matter of company policy, failed to pay her and other similarly situated "store managers" overtime compensation, in violation of 29 U.S.C. § 207(a), despite the fact that they routinely worked over 40 hours a week for a weekly salary.  Creel asserts that she was routinely required to work 50-60 hours a week at a Tuesday Morning store in Alabama.

Creel contends that Tuesday Morning's company policy misclassifies store managers under the executive exemption of the FLSA.  She argues that she should have been treated as a non-exempt employee and paid overtime because most of her job duties were non-managerial. Creel has provided deposition testimony from Judy Miller,

2

the regional manager of 15 Tuesday Morning locations in Georgia and Alabama.  Miller's testimony indicates that store managers perform a range of manual labor and non-managerial tasks at Tuesday Morning stores.  The testimony also indicated that store managers have limited discretion to change store hours, contract with service vendors, purchase supplies, choose merchandise sold, and hire, promote or terminate staff.  Miller also testified that Tuesday Morning uses one training manual to outline policies and procedures for store managers.  Creel offers this testimony as evidence that store managers principally engage in non-managerial tasks and that their job duties are dictated by a uniform-company policy.

Creel has also submitted four affidavits from current or former employees who held or hold manager positions at Tuesday Morning stores in Alabama and other States: Brandon Johnson (Alabama), Dwan Benn (Alabama), Dawn Rush (Florida), Linda Trombello (Illinois).  All four declarants state that they "routinely worked in excess of

forty ... hours per week" and "did not receive overtime compensation."

## II.  LEGAL STANDARD

As stated, Creel asserts that Tuesday Morning violated the FLSA, as codified at 29 U.S.C §§ 207(a)(1) & 215(a)(2).  Section 207(a)(1) provides in relevant part that "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  Section 215(a)(2) provides that it shall be unlawful to violate § 207.

Section 216(b) of the FLSA authorizes a plaintiff seeking relief to bring a collective action on behalf of similarly situated persons subject to the requirement that any person who wishes to become a part of the collective action must file a written consent in the court in which such action is brought.  29 U.S.C.

4

§ 216(b); <u>Davis v. Charoen Pokphand (USA), Inc.</u>, 303 F.Supp.2d 1272, 1274 (M.D. Ala. 2004) (Thompson, J.).

In <u>Hoffmann-LaRoche, Inc. v. Sperling</u>, 493 U.S. 165 (1989), the Supreme Court clarified the district court's authority to facilitate § 216(b) FLSA notice.  The Court found that early participation by the district court in the notice process serves a number of important goals. Judicial oversight of the contents of notice protects against misleading communications and misuse of the class device, <u>id</u>. at 171, and enables the court to resolve disputes about the contents of the notice before it is sent out, <u>id</u>.  District court involvement also ensures that all potential plaintiffs receive timely notice of a pending suit and thus prevents the proliferation of individual suits arising from the same allegedly illegal activity.  <u>Id</u>. at 172.  Also by setting a cut-off date for the receipt of consents, the court can expedite resolution of the action.  <u>Id</u>.  For all of these reasons, the Supreme Court concluded that a district court "ha[s] discretion, in appropriate cases, ... [to] facilitat[e]

5

notice to potential plaintiffs" in actions brought under § 216(b) of the FLSA.  Id. at 169, 171.  Similarly, the Eleventh Circuit Court of Appeals has stated that "the broad remedial purpose of the Act ... is best served if the district court is deemed to have the power to give such notice to other potential members of the plaintiff class to 'opt-in' if they so desire." Dybach v. Florida Dep't of Corr., 942 F.2d 1562, 1567 (11th Cir. 1991) (citation omitted).

Before intervening in the notice procedure, a "district court should satisfy itself that there are other employees ... [1] who desire to 'opt-in' and [2] who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." Morgan v. Family Dollar Stores, 551 F.3d 1233, 1259 (11th Cir. 2008) (quoting Dybach, 942 F.2d at 1567-68).  To satisfy the "similarly situated" requirement, plaintiffs "need show only that their positions are similar, not identical, to the positions held by the putative class members." Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d

1208, 1217 (11th Cir. 2001) (quoting <u>Grayson v. K Mart</u> <u>Corp.</u>, 79 F.3d 1086, 1096 (11th Cir. 1996)).  Thus, "[a] unified policy, plan, or scheme ... may not be required to satisfy the ... 'similarly situated' requirements of § 216(b)."  <u>Id</u>. at 1219 (internal quotations omitted).

In <u>Hipp</u>, the Eleventh Circuit recommended a two-tiered procedure that district courts should use in certifying collective actions under § 216(b).  252 F.3d at 1218.

> "The first determination is made at the so-called 'notice stage.'  At the notice stage, the district court makes a decision--usually based only on the pleadings and any affidavits which have been submitted--whether notice of the action should be given to potential class members.
>
> "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class.   If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.'   The action proceeds as a representative action throughout discovery.

"The second determination is typically
precipitated by a motion for
'decertification' by the defendant
usually filed after discovery is largely
complete and the matter is ready for
trial. At this stage, the court has
much more information on which to base
its decision, and makes a factual
determination on the similarly situated
question. If the claimants are
similarly situated, the district court
allows the representative action to
proceed to trial. If the claimants are
not similarly situated, the district
court decertifies the class, and the
opt-in plaintiffs are dismissed without
prejudice. The class representatives--
i.e., the original plaintiffs--proceed
to trial on their individual claims."

Hipp, 252 F.3d at 1218 (quoting Mooney v. Aramco Servs.
Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995)). District
courts have generally applied the Hipp two-stage
framework. See, e.g., Cameron-Grant v. Maxim Healthcare
Servs., Inc., 347 F.3d 1240, 1242 n.2 (11th Cir. 2003)
("Since Hipp, the district courts in our circuit have
utilized the two-tiered approach.").

At the notice stage, "[t]he plaintiffs bear the
burden of demonstrating a 'reasonable basis' for their
claim of class-wide discrimination." Grayson v. Kmart

Corp., 79 F.3d 1086, 1097 (11th Cir. 1996).  "[T]he standard for determining similarity, at this initial stage, [is] 'not particularly stringent,' ... 'fairly lenient,' ... 'not heavy,' ... and 'less stringent than that for joinder under [Fed.R.Civ.P.] 20(a) or for separate trials under [Fed.R.Civ.P.] 42(b).'"  Morgan, 551 F.3d at 1260-61 (quoting Hipp, 252 F.3d at 1218). "The plaintiffs may meet this burden ... by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which 'successfully engage defendants' affidavits to the contrary.'"  Grayson, 79 F.3d at 1097 (quoting Sperling v. Hoffman-LaRoche, 118 F.R.D. 392, 406-07 (D.N.J. 1988) (Ackerman, J.)).  "The rationale for the 'fairly lenient standard' [at the 'notice stage'] is that at the early stages of litigation, plaintiffs have not had time to conduct discovery and marshal their best evidence." Davis v. Charoen Pokphand (USA), Inc., 303 F.Supp.2d 1272, 1276 (M.D. Ala. 2004) (Thompson, J.) (citing Hipp, 252 F.3d at 1218).

9

Tuesday Morning contends that, because the parties have conducted discovery, the court should "apply a more rigorous standard than that called for by <u>Hipp</u>" before facilitating class notice. <u>Id</u>. If by "rigorous," Tuesday Morning is suggesting that the court should apply a 'harsher' or 'more demanding' standard, this court in <u>Davis</u> did not mean that. Instead, the court meant that, because the parties had conducted some discovery, the court could, and should, be 'more accurate' in its assessment of whether a collective action is warranted. As this court stated, a more rigorous standard is appropriate when parties have conducted "extensive discovery" and can "marshal their best evidence." <u>Id</u>. In short, the court should make use of whatever information it has available at the time; it would be a waste of judicial resources to do otherwise. Indeed, it would be illogical and wasteful to all concerned to certify a collective action if the evidence is already sufficient to indicate that a decertification is likely to follow.

10

### III.  DISCUSSION

Creel "seeks to represent all 'similarly situated' Store Managers employed by Tuesday Morning who were subject to the company's uniform policy of not paying its managers one and one-half times their hourly wage for time worked in excess of forty (40) hours per work week during the three (3) years prior to filing of the Complaint." Pl's Mot. Conditional Class Cert. (Doc. No. 19) at 1. Creel has moved for the court to facilitate notice to the class by (1) granting conditional class certification; (2) allowing nationwide notice to be sent to all managers currently employed by Tuesday Morning or previously employed within three years of the filing of Creel's suit; and (3) directing Tuesday Morning to provide contact information for all such employees.

Tuesday Morning contends, among other things, that Creel has not established that she is similarly situated to other members of the putative class.  Courts have affirmed the existence of other employees who desire to opt-in on the basis of affidavits of other employees,

<u>Harper v. Lovett's Buffet, Inc.</u>, 185 F.R.D. 358, 362 (M.D. Ala. 1999) (Albritton, C.J.) (affidavits from 15 other employees); <u>White</u>, 204 F.Supp.2d at 1316 (affidavits from three other employees), consents to join the lawsuit filed by other employees, <u>Tucker v. Labor Leasing, Inc.</u>, 872 F.Supp. 941, 947-48 (M.D. Fla. 1994) (Schlesinger, J.), and expert evidence on the existence of other similarly-situated employees, <u>Barron v. Henry County School Sys.</u>, 242 F.Supp.2d 1096, 1105 (M.D. Ala. 2003) (Albritton, C.J.). Courts have been clear, however, that a plaintiff's mere stated belief in the existence of other employees who desire to opt-in is insufficient, <u>Horne v. United Servs. Auto. Ass'n</u>, 279 F.Supp.2d 1231, 1236 (M.D. Ala. 2003) (Albritton, C.J.), and that "unsupported expectations that additional plaintiffs will subsequently come forward" are also insufficient, <u>Mackenzie v. Kindred Hosps. East, L.L.C.</u>, 276 F.Supp.2d 1211, 1220 (M.D. Fla. 2003) (Merryday, J.).

Creel has met her "burden of demonstrating a reasonable basis for crediting the[] assertions that

aggrieved individuals exist[] in the broad class ...
proposed." Haynes v. Singer Co., Inc., 696 F.2d 884, 887
(11th Cir. 1983). Here, Creel introduces more than her
own statement that other potential class members exist.
Horne, 279 F.Supp.2d at 1236; Mackenzie, 276 F.Supp.2d at
1220. Four other managers in three States have submitted
affidavits indicating their consent to join the lawsuit
as party plaintiffs. Thus, the court concludes that Creel
has carried her low burden of demonstrating that other
aggrieved individuals exist in her proposed class and that
some desire to opt-into her suit.

The last inquiry is whether the proposed class
consists of similarly situated individuals. To satisfy
the "similarly situated" requirement, plaintiffs "need
show only that their positions are similar, not identical,
to the positions held by the putative class members."
Hipp, 252 F.3d at 1217. "A unified policy, plan, or
scheme ... may not be required to satisfy the more liberal
'similarly situated' requirements of § 216(b)." Id. at
1219 (internal quotations omitted).

13

Cases from district courts show a variety of approaches to applying the "similarly situated" requirement. Some cases have focused on the similarity between job responsibilities and pay provisions of plaintiffs and those of the proposed class. See, e.g., Bradford v. Bed Bath & Beyond, Inc., 184 F.Supp.2d 1342, 1345 (N.D. Ga. 2002) (Story, J.) ("The only determinative issue is whether Plaintiffs' job duties were similar."). Other decisions, most notably a series of opinions authored by former Chief Judge Albritton of this court, have required evidence of a factual or legal nexus between plaintiff's claims and the claims of the proposed class. For example, in White v. Osmose, Inc., 204 F.Supp.2d 1309, 1314 (2002), he wrote: "[A] plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions. Without such a requirement, it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready

14

opportunity for abuse." <u>See also</u> <u>Anderson v. Cagle's,</u>
<u>Inc.</u>, 488 F.3d 945, 953 (11th Cir. 2007) (citing <u>White's</u>
nexus requirement approvingly, but at the second stage of
the <u>Hipp</u> analysis).   Finally, at least one court has
employed a multi-factor approach.   <u>See</u> <u>Stone v. First</u>
<u>Union Corp.</u>, 203 F.R.D. 532, 542-43 (S.D. Fla. 2001)
(Gold, J.).

     Without committing to a single approach for all
future cases, the court concludes that the similarly
situated requirement can be met either by showing
similarity between job responsibilities and pay provisions
of plaintiffs and proposed class members or by providing
evidence of a nexus between plaintiff's claims and the
claims of the proposed class.

     Of course, the broader and more numerous and complex
the collective action the plaintiff wants, the more
careful the court must be.  The consequences of
decertification (wasted resources for all involved) for
a class that has few members and simple and legal factual
issues would be dramatically different from the

decertification consequences of a class with a huge membership and extremely complex legal and factual issues. In short, the court must be reasonably certain that the proposed litigation is not biting off more than can be chewed.

Here, Creel is asking that the court certify a 'national' collective action. Such a putative collection would, therefore, span the entire nation and, according to the evidence, include over 1250 members. However, after extensive discovery, Creel has presented, in addition to her own testimony, affidavits from only four other store managers and from only two other States (Florida and Illinois). This evidence does not provide an adequate platform from which to make the grand leap to a national collective action.

Admittedly, Creel has also established that Tuesday Morning uses one training manual to outline policies and procedures for store managers and that store managers are trained in Dallas, Texas. However, in assessing this evidence, the court cannot turn a blind eye to the

16

observations made by a California appellate court, Keller v. Tuesday Morning, Inc., 179 Cal. App. 4th 1389 (Cal. App. 2d Dist. 2009),in upholding the decertification of a class of store managers who claimed that they were entitled to overtime compensation because they did not qualify for the overtime exemption under the California wage-and-hour laws.  There, the appellate court held that, although store managers have the same written job description, many other factors (including the size of stores, the number of employees at stores, the location of the stores, the configuration of the stores, and the amount of store sales) all result in store managers performing their duties in significantly different ways. The court therefore concluded that the amount of time each store manager spends performing managerial and non-managerial duties varies too much for them to be considered similarly situated.  To be sure, the California court was applying state law and state class-certification rules and was deciding whether a class should be

17

decertified; nevertheless, that court's observations are still instructive.

Moreover, consistent with the observations from the California appellate court, Tuesday Morning has submitted substantial evidence that many of its store managers perform duties quite different from those of Creel.

Of course, if Creel had restricted herself to stores of only a certain location and size and other limiting characteristics, a collective-action certification might very well be appropriate.  The platform here might then be adequate for such a substantially more modest leap.

Certification of a national collective action is not warranted here.

***

Accordingly, it is ORDERED that plaintiff Tisha Creel's motion for class certification (doc. no. 19) is denied without prejudice.

DONE, this the 6th day of May, 2013.

                         /s/ Myron H. Thompson
                    UNITED STATES DISTRICT JUDGE